| | | | |
|---|---|---|---|
| Case No. | SACV 18-01597-JVS(DFMx) | Date | March 5, 2019 |
| Title | NEWPORT INVESTMENT GROUP, LLC v EUGENE LESLIE CLIETT, et al | | |

| | |
|---|---|
| Present: The Honorable | James V. Selna |

| | |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Motion to Dismiss**

Defendants Eugene Leslie Cliett ("Cliett"), Steven G. Park ("Park"), Barbara Scarlata ("Scarlata"), Diane Moxley ("Moxley"), Ethel B. Wister, ("Ethel"), and William R. Wister ("William")[1] (collectively, the "Defendants"), moved to dismiss Plaintiff Newport Investment Group, LLC's ("Newport") Complaint as to all Defendants for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or alternatively, to strike or dismiss under Federal Rule of Civil Procedure 12(b)(6) and California Anti-SLAPP Statute, or to transfer venue to the Eastern District of Pennsylvania. (Mot., Docket No. 11.) Newport opposed.[2] (Opp'n, Docket No. 20.)[3] Defendants replied. (Reply, Docket No. 22.)

Newport also moved to remand the case back to Orange County Superior Court. (Mot., Docket No. 21.) Defendants opposed. (Opp'n, Docket No. 28.) Newport filed a reply. (Reply, Docket No. 31.)

---

[1] The Court refers to the Wister Defendants by first name to avoid confusion.

[2] Newport also made a Request for Judicial Notice ("RJN"). (RJN, Docket No. 20-1.) Because the documents do not relate to the motion to dismiss for lack of personal jurisdiction, the Court does not rely on them in reaching its decision.

[3] Defendants point out that Newport's opposition brief was untimely because it was filed on January 8, 2019 although it was due by January 7, 2019. (Reply, Docket No. 22 at 10.) The Court exercises its discretion to consider the opposition brief, but notes that the Court may refuse to consider documents filed untimely in the future. See L.R. 7-12.

For the following reasons, the Court **grants** the motion to dismiss for lack of personal jurisdiction. Because the Court determines that it does not have personal jurisdiction over Defendants, the Court does not decide whether to strike, dismiss the case under 12(b)(6) or California's Anti-SLAPP statute, or transfer venue, and the Court **denies as moot** the motion to remand.

## I. BACKGROUND

Newport alleges the following. Newport is the Assignee of Luxury Asset Lending, LLC ("Luxury"), which assigned a $3,897,919.22 Default Judgment entered by an Orange County, California Court on April 6, 2017 after Philadelphia Television Network ("PTN"), Richard Glanton ("Glanton") and Wayne Curtis Weldon ("Weldon") defaulted on multiple loans to Luxury. (Complaint, Docket No. 1-1, Ex. B.)

The Complaint states with respect to each of the Defendants: "On information and belief, Plaintiff alleges that at all times relevant, Defendant . . . is and was an individual conducting business in Orange County, California. [Defendant] is and was an employee, servant, owner, shareholder and/or agent of the other Defendants and along with the other Defendants, participated, aided, abetted and co-conspired with the other Defendants to accomplish the acts alleged herein." (Id. ¶¶ 2-7.) Newport alleges that "Defendants' wrongful conduct and interference occurred with contracts made in Orange County, California, and their liability arose, at least in part in Orange County, California and that conduct has caused injury to Plaintiff in Orange County, California. (Id. ¶ 8.) Newport states that "Defendants fraudulently represented to the FCC that they were shareholders in PTN through an unexecuted Shareholder Agreement and Schedule, and conspired to execute the Consent based on that." (Id. ¶ 44.) Newport alleges that Defendants acted in order to delay or cancel Newport's FCC Application and disrupt the transfer of the FCC License from PTN to assignees of Newport under the three court orders in ways that have damaged Newport tens of millions of dollars. (Id. ¶¶ 32, 34, 36, 43, 44.) Newport also contends that Cliett violated his fiduciary duties to Newport "as assignee of Glanton's majority shares in PTN" by "filing the Displacement App, Objection, Reply, Opposition, and corresponding Declarations, with no concern as to the costs already incurred by Plaintiff through the Judgment" and that the other Defendants aided and abetted him in doing so "in defiance of the 3 Court Orders." (Id. ¶¶ 55-56, 61, 67.)

On April 27, 2018, an Acknowledgment of Assignment of Judgment was entered

in the case in Orange County, California, indicating that the judgment entered in favor of Luxury was assigned to Newport. (Assignment, Docket No. 1-1, Ex. D.) On April 30, 2018, Glanton agreed to "transfer, assign, and convey to Newport . . . "(a) all rights, title and interest in all shares of stock in [PTN] which were issued to . . . Glanton, whether standing in his name or beneficially held by [PTN] for . . . Glanton, the quantity of which is represented to be 425 shares of stock; and (b) upon FCC Approval, all control, possession and ownership of [PTN], License, and any and all PTN Assets to Newport . . . as assignee of the Judgment entered herein, in partial satisfaction of the Judgment which assignment shall include any and all payment proceeds, rights or dividends in the FCC License WEFG-LD (Philadelphia, PA; FCC Facility # 167606), a UHF, Digital Low Power TV Station serving the Tri-State area television market of Philadelphia Pennsylvania." (Stipulation, Docket No. 1-1, Ex. F at 2–4.) On May 10, 2018, the Judgment was domesticated in Philadelphia, Pennsylvania. (Order, Docket No. 1-1, Ex. G.)

On July 27, 2018, Newport filed a Complaint against Defendants for: (1) intentional interference with contractual relations; (2) intentional interference with prospective economic advantage; (3) negligent interference with prospective economic advantage; (4) aiding and abetting breach of fiduciary duties; (5) breach of fiduciary duties; (6) constructive fraud; (7) actual fraud; (8) civil conspiracy; (9) negligent misrepresentation; (10) declaratory judgment and accounting; and (11) violation of Business & Professions Code § 17200. (Complaint, Docket No. 1-1.) On September 7, 2018, Defendants removed the case to federal court. (Not., Docket No. 1.)

## II. LEGAL STANDARD

### A.    Fed R. Civ. Proc. 12(b)(2)

Before trial, nonresident defendants may move to dismiss the case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Personal jurisdiction refers to a court's power to render a valid and enforceable judgment against a particular defendant. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980); Pennoyer v. Neff, 95 U.S. 714, 720 (1877), overruled in part by Shaffer v. Heitner, 433 U.S. 186, 206 (1977). The contours of that power are shaped, in large part, by the Due Process Clause of the Fourteenth Amendment, which requires sufficient "contacts, ties, or relations" between the defendant and the forum state before "mak[ing] binding a judgment *in*

*personam* against an individual or corporate defendant." Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). Due Process requires that "there exist 'minimum contacts' between the defendant and the forum" in order to protect the defendant "against the burdens of litigating in a distant or inconvenient" court and lend "a degree of predictability to the legal system." World-Wide Volkswagen, 444 U.S. at 291–92, 297.

Jurisdiction must also comport with law of the forum state. See Fed. R. Civ. P. 4(k)(1)(A); Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc). Because California's long-arm statute allows the exercise of jurisdiction on any basis consistent with the state and federal constitutions, the jurisdictional analyses of state law and federal due process are the same. Cal. Code. Civ. Proc. § 410.10; see also Yahoo!, 433 F.3d at 1205.

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Plaintiff's allegations of jurisdictional facts must also be supported by competent proof. Hertz Corp. v. Friend, 559 U.S. 77, 96–97 (2010). In the absence of an evidentiary hearing, "[h]owever, this demonstration requires that the plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)). To make the requisite showing, a plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (internal quotation marks and citation omitted). In evaluating the plaintiff's showing, all uncontroverted allegations in the complaint are taken as true and all disputed facts are resolved in plaintiff's favor. Id.; Schwarzenegger, 374 F.3d at 800.

A defendant may waive personal jurisdiction requirements prior to the initiation of suit. M/S Bremen v. Zapata Off-shore Co., 407 U.S. 1, 11 (1972). Valid forum selection clauses, when freely negotiated and not unreasonable or unjust, constitute a waiver of personal jurisdiction requirements. Id. at 12–13. In diversity jurisdiction cases, federal law controls the interpretation and analysis of forum selection clauses because forum selection is a venue matter. Jones v. GNC Franchising, Inc., 211 F.3d 495, 497 (9th Cir. 2000); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988).

Personal jurisdiction may be premised on general personal jurisdiction (based on a defendant's continuous presence in a state) or specific personal jurisdiction (based on specific contacts with the state specifically related to the claims at issue).

### 1.     General Personal Jurisdiction

For general jurisdiction to exist over a nonresident defendant, it must have affiliations with the forum state "so continuous and systematic as to render the foreign [defendant] essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)) (internal quotation marks omitted). In other words, a defendant's "continuous and systematic general business contacts" with the forum must "approximate physical presence" in the forum state. Schwarzenegger, 374 F.3d at 801 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984) and Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)). Where general jurisdiction exists, the Court has jurisdiction over the defendant for all purposes, even in cases where the claims arise from dealings unrelated to those that establish jurisdiction. Daimler, 571 U.S. at 127.

### 2.     Specific Personal Jurisdiction

A defendant is subject to specific personal jurisdiction only if a controversy arises out of or is sufficiently related to the defendant's contacts with the forum state. Goodyear, 564 U.S. at 919; see also Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995). The Ninth Circuit has established a three-part test to determine whether courts may exercise specific jurisdiction over a nonresident defendant:

> (1)     The nonresident defendant purposefully directs his activities or consummates some transaction with the forum or the forum's resident; or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; and
>
> (2)     The claim arises out of or results from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-01597-JVS(DFMx) | Date | March 5, 2019 |
|---|---|---|---|
| Title | NEWPORT INVESTMENT GROUP, LLC v EUGENE LESLIE CLIETT, et al | | |

nonresident defendant's forum-related activities; and

(3) The exercise of jurisdiction comports with fair play and substantial justice (i.e., jurisdiction is reasonable).

Schwarzenegger, 374 F.3d at 802 (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden on the first two prongs. Id. If the plaintiff fails to satisfy either prong, "jurisdiction in the forum would deprive the defendant of due process of law." Omeluk, 52 F.3d at 270. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78 (1985)).

### III. Discussion

**A. Motion to Dismiss for Lack of Personal Jurisdiction**

The parties appear to be in agreement that general jurisdiction is not at issue in this case. Thus, the issue is whether Defendants, who are not citizens of California can be subject to personal jurisdiction in California based on their contacts with the forum state. Defendants have submitted declarations indicating that they are domiciled in Pennsylvania, North Carolina, or Florida, and none of them does any business or has any other connection to California. (Cliett Decl., Docket No. 14 ¶¶ 2-8; Park Decl., Docket No. 15 ¶¶ 2-6, 12; Moxley Decl., Docket No. 18 ¶¶ 2-8; Scarlata Decl., Docket No. 19 ¶¶ 2-7; William Decl., Docket No. 17 ¶¶ 2-9; Ethel Decl., Docket No. 16 ¶¶ 2-8.)

**1. Purposeful Availment**

a. Intentional Conduct

Newport indicates that "[t]his case is about the conduct of the Defendants after they entry of the Judgment in the CA Case" and "the blatant misrepresentations they continue to espouse on behalf of an entity they do not control." (Opp'n, Docket No. 20 at 3.) Newport argues that the Court has personal jurisdiction over Defendants because the conduct alleged in the Complaint "stems from the Judgment issued by a California Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-01597-JVS(DFMx) | Date | March 5, 2019 |
| Title | NEWPORT INVESTMENT GROUP, LLC v EUGENE LESLIE CLIETT, et al | | |

in the CA Case" and "was directed at California entities and principals." (Id. at 10.) Specifically, Newport contends that Defendants purposely availed their activities toward California because as minority shareholders in PTN, they were fully aware of the Judgment against PTN and "collectively engaged in an extensive email and letter writing campaign communicating . . . with Luxury, Newport, its principals, and its attorneys all domiciled in California and having their principal place of business in California." (Id. at 10–11; Roche Decl., Docket No. 20-10, Ex. E.[4]) In addition, Newport suggests that personal jurisdiction over Defendants is supported by the fact that the Loan Agreements all list California as the choice of law provision. (Roche Decl., Docket No. 20-5 ¶ 7, Ex. F at 6.) See Consipio Holding, BV v. Carlberg, 128 Nev. 454, 461 (2012) ("A district court can exercise personal jurisdiction over nonresident officers and directors who directly harm a Nevada corporation.")

Newport also argues that "Defendants intentionally directed activity toward[] California since they knew their fraudulent conduct would disrupt the business of [Newport] as Judgment Creditor." (Opp'n, Docket No. 20 at 11–12.) Newport contends that "every email, letter, and pleadings with the FCC and PA Case was aimed at California." (Id. at 12.) The Complaint states that "Defendants knew as early as September, 2016 the existence of the Loans and Judgment through multiple emails and letters in which Defendants were either senders or copied on." (Complaint, Docket No. 1-1 ¶ 35.) In addition, the Complaint alleges that Defendants conspired by drafting the Consent of Shareholders in Lieu of Meeting ("Consent"), which "a) was executed by Defendants Cliett, [Ethel], and Scarlata; b) was executed with the help, knowledge and participation of Defendants William, Moxley, and Park as beneficiaries; and c) attached to the Objection filed by Defendants with the FCC as their Exhibit 'E' knowing that it was inaccurate." (Complaint, Docket No. 1-1, Ex. A ¶ 25.) See Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) ("[P]urposeful availment is satisfied even by a defendant 'whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state.'" (quoting Haisten v. Grass Valley Med. Reimbursement Fund, 784 F.2d 1392, 1397 (9th Cir.1986))).

---

[4] The Court notes that the Roche Declaration does not contain a signed oath indicating that the contents are true and correct; thus, it is inadmissible. See L.R. 1-4; 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4). The Court's discussion that follows assumes—in accordance with counsel's representation at oral argument—that the deficiency could be remedied.

      b.      Expressly Aimed at the Forum State

Newport cites Nevada court cases for the proposition that California courts require only that claims "have 'a specific and direct relationship or be intimately related to the forum contacts'" in order for them to be expressly aimed at the forum state. Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court ex rel. Cty. of Clark, 122 Nev. 509, 515–16 (2006) (quoting Munley v. District Court, 104 Nev. 492, 496 (1988)). Newport asserts that a "direct nexus" or merely "some nexus between the cause of action and defendant's contact with the forum" is sufficient to demonstrate that Defendants' conduct was expressly aimed at California. In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 742 (9th Cir. 2013), aff'd sub nom. Oneok, Inc. v. Learjet, Inc., 135 S. Ct. 1591 (2015) (quoting Fireman's Fund Ins. Co., 103 F.3d at 894) ("Under the 'but for' test, 'a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action.'")); Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists, 945 F. Supp. 1355, 1368 (D. Or. 1996). Accordingly, Newport suggests that Defendants established contacts with California by directing harm toward it, a California citizen. (Opp'n, Docket No. 20 at 13.)

The Court finds that even if there was intentional conduct involved in this case, such conduct was not expressly aimed at California.[5] Newport acknowledges in its Complaint that some of the Defendants were merely copied on emails and letters sent to Luxury and Newport. (Complaint, Docket No. 1-1 ¶ 35.) Being copied on an email or receiving a letter does not constitute an intentional act directed at California just because another recipient is a California citizen. Thus, based on the documents Newport attached in opposition, the only Defendant who could be said to have intentionally acted by sending emails is Cliett. Nonetheless, even Cliett's emails to Luxury do not amount to intentional conduct aimed at California. While he communicated to a person or entity located in California, the communication did not pertain to any ongoing business in California; rather, it stated his position that Glanton's shares were not assignable based on a shareholder agreement of a Pennsylvania corporation.[6] (Sept. 21, 2016 Email,

---

      [5] The Court assumes without deciding that intentional conduct was pled for each Defendant.

      [6] An email communication sent by Cliett to Brian Roche of Luxury on September 21, 2016 states:

Docket No. 20-10, Ex. E; December 6, 2017 Email, Docket No. 20-10, Ex. E.) As Defendants point out, Newport does not allege that it was damaged by such communication, and the claims do not appear to arise from any email communication. (Reply, Docket No. 22 at 17.)

Other than the email and letter writing, the other allegations in the Complaint relate to Defendants' signing or helping others to sign the Consent or declarations that were used to support their position in the FCC proceedings. But neither the signing of the documents nor the FCC proceedings are alleged to have taken place in California. Moreover, the loan documents that Newport references are not ones to which any of the Defendants was a party. (Loan Agreement, Docket No. 20-11, Ex. F at 6.) While the Complaint alleges that Glanton, a nonparty, as an individual and former CEO of PTN, agreed to transfer the assets at issue to Newport based on his obligations from loan agreements with Luxury, such actions do not establish personal jurisdiction over these individual Defendants, especially since PTN is not a citizen of California. See Sacramento Suncreek Apartments, LLC, v. Cambridge Advantaged Properties II, L.P., 187 Cal. App. 4th 1, 15 (2010) ("[J]urisdiction [over partners] may be exercised only

---

> While I am not privy to the details of your transaction with Mr. Glanton, I am familiar with the PTN shareholder's agreement which states in part "No Shareholder shall sell, pledge, transfer, donate, assign or otherwise dispose of (collectively 'Transfer') whether voluntarily or by operation of law, any Shares held by Such Person, or any beneficial interest therein..."
>
> You and Company are hereby notified that Mr. Glanton was, and is, prohibited from assigning, pledging or allowing any lien on his Common Shares pursuant to Section 3 of the Shareholders Agreement.
>
> You and Company are further notified to cease any and all further actions in the attempt to sell The PTN, including representations of authority to do so.

(Sept. 21, 2016 Email, Docket No. 20-10, Ex. E.) An email sent by Cliett to Brian Roche dated December 6, 2017 repeats the citation to the Shareholders Agreement and goes on to state, "Mr. Glanton's 425 shares represents 44.9% of the outstanding shares of PTN which does not allow him the authority to bind PTN to a potential asset sale or any other action as a minority shareholder without the full authorization of the PTN Board of Directors and the majority of PTN shareholders." (December 6, 2017 Email, Docket No. 20-10, Ex. E.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-01597-JVS(DFMx) | Date | March 5, 2019 |
| Title | NEWPORT INVESTMENT GROUP, LLC v EUGENE LESLIE CLIETT, et al | | |

over those who themselves satisfy the minimum contacts."). Accordingly, the Court **grants** Defendants' motion to dismiss for lack of personal jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, the Court **grants** Defendants' motion to dismiss the Complaint for lack of personal jurisdiction. Because the Court dismisses based on lack of personal jurisdiction, the Court **denies as moot** Newport's motion to remand. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 588 (1999) ("Where . . . a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction.") The Court grants Newport thirty (30) days to file an amended complaint[7] addressing the deficiencies identified herein.

**IT IS SO ORDERED.**

| | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |

---

[7] The Court requests that Newport file a redline version of the amended pleading showing all additions and deletions of material as an exhibit to the amended pleading or separately.